Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>VERNON JORDAN,<br><br>*Defendant*. | Crim. No. 18-12<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant Vernon Jordan's motion to modify his sentence and for immediate compassionate release. D.E. 29, 30 ("Br."). The Government filed opposition. D.E. 32 (Opp."). The Court reviewed the parties' submissions and considered the motions without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to the ongoing COVID-19 pandemic as well as positive steps that he has taken in prison. For the following reasons, Defendant's motion for compassionate release is denied, as is his motion for appointment of counsel.

**I.      BACKGROUND**

**A.  Underlying Criminal Proceedings**

In January 2018, Jordan was indicted for possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). On May 15, 2018, Blake pled guilty, D.E. 13, pursuant to a written plea agreement, D.E. 15. The Court then sentenced Defendant on October 30, 2018, to a to a term of imprisonment for 84 months and supervised release for 3 years. D.E. 26, 27.

Blake is currently housed at USP Big Sandy in Kentucky. He is scheduled to be released on October 16, 2024.

### B. COVID-19 Pandemic

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html#background. "COVID-19 is primarily transmitted from person-to-person through respiratory droplets. These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.* Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death). *Id.* As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and maintenance of clean surfaces and devices. *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases. *COVID-19*, "Older Adults," Centers for Disease Control and Prevention (May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. For example, persons in their sixties and seventies are at a higher risk of severe illness than people in their fifties. *Id.* Those 85 or older are at greatest risk. *Id.* Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States. *Id.* The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic liver

diseases, chronic lung diseases (including asthma if it is moderate to severe), cystic fibrosis, dementia or other neurological conditions, diabetes, certain disabilities, HIV infection, immunocompromised state, certain mental health conditions, obesity, pregnancy, physical inactivity, sickle cell disease, smoking, solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders, and tuberculosis. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (last update Feb. 25, 2022),[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

As of April 20, 2022, the United States has had 80,526,422 COVID-19 cases, resulting in 986,545 deaths. *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited April 20, 2022).

### C. Federal Bureau of Prisons

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus and, initially, admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screenings for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus

---

[1] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

"exposure risk factors and symptoms." *Id*. Any new inmate who is asymptomatic but has had a risk of exposure is quarantined. *Id*. According to the Government, the quarantine period is for a minimum of 14 days or until cleared by medical staff. Opp. at 4. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id*. at 5. The Government also states that the BOP has taken the following steps to prevent the spread of the virus: group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id*.

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Inmates fall into different priority levels for vaccination: Priority Level 1 (for inmates in certain high priority jobs, including health service unit assignments); Priority Level 2 (inmates who are 65 or older or who are, according to CDC criteria, at an increased risk for severe illness from the virus); Priority Level 3 (inmates who are aged 50 through 64 or who might be, according to CDC criteria, at an increased risk for severe illness from the virus); and Priority Level 4 (all other inmates). *Id*. As of April 20, 2022, the BOP had administered 312,610 doses of vaccine. *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited April 20, 2022).

The BOP COVID-19 current statistics are as follows: (1) 53 inmates and 150 staff presently have confirmed positive tests; (2) 52,820 inmates and 12,558 staff have recovered; and (3) 293 inmates and 7 staff have died. *Id*. USP Big Sandy, where Defendant is housed, currently

4

reports 0 inmate and 0 staff cases. *Id.* In addition, 294 inmates and 205 staff have recovered, and there have been no deaths. *Id.*

### D. The Parties' Arguments

Jordan asks the Court to grant him relief for the following reasons: (1) the COVID-19 pandemic, (2) he has completed over 50% of his sentence, (3) he has not incurred any disciplinary infractions, (3) he is working towards his GED and has completed two other programs, (4) he works in the kitchen, and (5) he has a job offer if he should be released. Br. at 1. In opposition, the Government indicates that Jordan's request should be denied because (1) he declined vaccination against COVID-19, (2) he does not assert any health problems that make him vulnerable to a more severe reaction should he contract the virus, and (3) the Section 3553(a) factors militate against release. Opp. at 8-10.

Jordan attaches a September 7, 2021 communication to the warden at USP Big Sandy, seeking compassionate release due to the pandemic. D.E. 29 at 2.

## II.   LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—

>> (i) *extraordinary and compelling reasons warrant such a reduction*; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;
>
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added). The Government does not contest that Jordan has exhausted his administrative remedies.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("U.S. Sentencing Guidelines Manual"). The application notes to the section provide four circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n. 1(A)-(D). In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021), the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant. *Id.*

### III.  ANALYSIS

The Court finds that Defendant has not met his burden as to extraordinary and compelling circumstance for the following reasons. First, Jordan does not indicate that he suffers from any medical issue that puts him at a higher risk of having a more severe outcome should he contract the virus. Second, Jordan has declined to be vaccinated. As a result, this Court joins the numerous other courts who have found that such a decision demonstrates that a defendant has voluntarily foregone an opportunity for self-care offered by the BOP. *See, e.g.*, *United States v. Baeza-Vargas*, No. Cr-10-00448, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (listing more than a dozen decisions reaching the same result). Defendant has not provided any medical reason for refusing the vaccine (to the contrary, based on his asthma, he has an additional medical reason to receive the vaccine); he simply refused. *See United States v. Jackson*, No. 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021). Defendant is within his rights to refuse the vaccine, but any corresponding argument that he must be released because of potential complications were he to contract the virus rings hollow. *United States v. Jackson*, No. 15-cr-260(7), 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021). Finally, USP Big Sandy currently does not have any inmates who are positive.

The Court also agrees with the Government that the Section 3553(a) factors militate against release. Jordan indicates that he has taken positive steps since incarceration. These efforts include completing two programs, working towards his GED, remaining free of disciplinary infractions,

and obtaining a job. This information was not available to the Court at sentencing and weigh in his favor. Nevertheless, Jordan's offense was serious as he possessed a loaded weapon after having been convicted of a felony. However, Jordan did not merely have a single prior felony conviction. He was in a Criminal History Category VI based on 21 criminal history points, 8 more points than required to place him in that criminal history category. His past convictions included drug distribution, a drug conspiracy, resisting arrest, and aggravated assault. Moreover, Jordan had very little by way of legitimate work history although he was 36 at the time of sentencing.

### IV.   CONCLUSION

For the foregoing reasons, and for good cause shown,

It is on this 20th day of April 2022 hereby

**ORDERED** that Defendant's motion for compassionate release, D.E. 29. 30, is **DENIED**; and it is further

**ORDERED** that the Clerk's Office shall mail a copy of this Opinion and Order to Defendant by regular mail.

_____
John Michael Vazquez, U.S.D.J.